IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.: 1:06-cr-62-1 (RMC) |
| | : | |
| | : | VIOLATIONS |
| vs. | : | |
| | : | 18 U.S.C. § 1001 |
| DONALD M. BOUCHER | : | |
| | : | |
| Defendant. | : | |

## FACTUAL BASIS FOR PLEA

At all times relevant hereto:

1. Company X was a privately-held for-profit health care corporation organized under the laws of Delaware. Company X operated as the parent company of a chain of long-term acute care hospitals located nationwide.

2. Company Y was a wholly-owned subsidiary of Company X, and it was a corporation as that term is defined in the Federal Election Campaign Act (FECA), Title 2, United States Code, Section 401 *et seq.* Company Y provided management services for Company X hospitals out of the Plano and Shreveport offices.

3. Defendant DONALD M. BOUCHER was the Director of Government Relations for Company Y, and he reported directly to Company Y's President and CEO David B. LeBlanc. As the Director of Government Relations, BOUCHER's responsibilities included establishing relationships with United States Senators and Representatives who serve on Senate and House Committees that oversee health care-related issues important to Company Y, and engaging in lobbying efforts for the purpose of furthering Company Y's legislative interests. BOUCHER's duties also included educating Company Y's executives and employees about the legal limits of

personal and corporate contributions to federal campaigns.

4. As Company Y's President and CEO, LeBlanc was responsible for the day-to-day management of Company Y. His duties included approving or disapproving expense reports submitted for reimbursement by Company Y executives and employees, including defendant BOUCHER. LeBlanc also had the discretion to recommend and implement salary increases and adjustments and the payment of bonuses to Company Y executives and employees, including BOUCHER.

5. The Federal Election Commission (FEC) was an agency of the United States government headquartered in Washington, D.C., and it was responsible for enforcing the reporting requirements of the FECA and for directing, investigating and instituting civil enforcement actions with respect to violations of the FECA. In addition, the FEC was responsible for making available to the public specific information about the true amounts and true sources of political contributions to federal candidates and their political committees.

6. As BOUCHER knew, the FECA specifically prohibited, among other things:

a. corporations from making contributions or expenditures in connection with the nomination and election of candidates for federal office (Title 2, United States Code, Section 441b(a) and

b. any person from making a contribution in the name of another person or knowingly permitting his or her name to be used to effect such a contribution (Title 2, United States Code, Section 441(f).

7. Beginning in or about April 1997, and continuing until in or about December 2002, in the District of Columbia and elsewhere, BOUCHER and LeBlanc knowingly obtained corporate

2

funds from Company Y and then used those funds to make approximately $50,000 in prohibited corporate contributions to political committees in their own names. This in turn caused numerous political committees to submit materially false statements to the FEC, because the political committees did not identify Company Y as the true source of the contributions.

8. These unlawful contributions were made in the following ways. BOUCHER and LeBlanc identified certain candidates and political committees that they believed would further the legislative interests of Company Y. Defendant BOUCHER submitted check requests and expense reports to Company Y, which defendant LeBlanc was aware of and approved, seeking corporate payment for political contributions that Boucher made in his own name. LeBlanc and BOUCHER also arranged for Company Y to make in-kind contributions to political committees for payment of expenses associated with political fund raising events. And, LeBlanc approved the payment of discretionary bonuses to BOUCHER knowing that BOUCHER would pay some of that money back to him so that he could make political contributions in his own name.

9. For example, in or about August 2001, BOUCHER assisted the campaign for Candidate A, a candidate for the United States House of Representatives, in having a fundraising event at a baseball game held at the Ballpark in Arlington in Arlington, Texas. BOUCHER paid approximately $3,250 for the tickets for that game, which BOUCHER then provided to Candidate A's campaign in connection with the fundraiser. BOUCHER was reimbursed by Company Y for the approximately $3,250 BOUCHER paid for the tickets. BOUCHER then represented to Candidate A's campaign that the tickets were paid for by three other individuals, and provided the campaign with the names of those three individuals. BOUCHER, however, knew that Company Y, rather than the three

individuals, was the true source of funding for the tickets. In so doing, BOUCHER caused Candidate A's campaign to submit materially false statements to the FEC.

| FOR THE DEFENDANT | FOR THE UNITED STATES |
|---|---|
| | ANDREW LOURIE<br>Acting Chief, Public Integrity Section |
| _____<br>DONALD M. BOUCHER | _____ 2/28/0<br>MATTHEW C. SOLOMON<br>Trial Attorney<br>U.S. Department of Justice<br>Criminal Division<br>Public Integrity Section |
| _____<br>JAMES ROLFE<br>Counsel for Defendant | _____<br>NICHOLAS A. MARSH<br>Trial Attorney<br>U.S. Department of Justice<br>Criminal Division<br>Public Integrity Section |